**Ralph MOORE**

v.

**Frank NEWELL.**

**Civ. No. 1–75–88.**

United States District Court,
E. D. Tennessee, S. D.

June 26, 1975.

ant to 28 U.S.C. § 2254 wherein the petitioner seeks to set aside a two-year sentence imposed in a criminal case entitled *"State of Tennessee v. Ralph Moore,"* No. 124,141 in the Criminal Court for Hamilton County, Tennessee. The case is presently before the Court upon the petition and answer, together with portions of the state court record. Petitioner is represented in this Court by retained counsel.

The records in this case reflect that petitioner was tried along with two co-defendants for a violation of T.C.A. § 39–4301, which provides as follows:

> "If any person, either verbally or by written or printed communication, maliciously threaten to accuse another of a crime, offense, or immoral act, or to do any injury to the person, reputation or property of another, with intent thereby to extort any money, property, or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall, on conviction, be punished by imprisonment in the penitentiary not less than two (2) years nor more than five (5) years."

The trial of the case produced the following facts which are, for the most part, undisputed. Petitioner was a leader in the Black Panther Party in Chattanooga, Tennessee. That organization attempted to operate a number of charitable programs for underprivileged members of the black community.[1] In order to raise money for these programs, petitioner and a co-defendant, Edwards, sought a contribution on July 12, 1972, from the manager of a Red Food Store, a supermarket located in a predominantly black section of Chattanooga. The store manager directed them to the president of the corporation after telling them he had no authority to authorize such a contribution. A short time later petitioner and Edwards returned to find out exactly who they were to see about

John L. Alley, Hixon, Tenn., for plaintiff.

Gary Gerbitz, Dist. Atty. Gen., Hamilton County, Chattanooga, Tenn., R. E. Ashley, Jr., Atty. Gen., by W. Henry Haile, Asst. Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a proceeding upon a petition for a writ of habeas corpus filed pursu-

---

1. Among these programs were a free breakfast program for school children, a free sickle-cell anemia testing program, and a free day-care program for working mothers.

the contribution. After being advised of the name of the corporation president, the store manager testified that petitioner said to Edwards, "Well, I guess we'll have to close them up." On July 18th, petitioner and Edwards attempted to see the corporation president but were told that he was in a board of directors meeting and that they would have to make an appointment to see him. They left without seeing him.

On August 10, 1972, petitioner, the two co-defendants, and others, established a picket line in front of the Red Food Store at about 9:00 A.M. Petitioner carried a sign reading, "Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount to our Free Day Care for working mothers program, a people survival program."

Red Food Stores never made such a contribution. The record shows that the demonstrators talked to customers of the store during the three hours of the picketing and some of them left without entering the store, but others crossed the picket line. Petitioner and others were arrested about noon after being warned that their activities were considered unlawful and after being given an opportunity to cease their picketing. There was no evidence that the demonstrators threatened physical violence to anyone or were otherwise boisterous or unruly. Nor was there evidence that they physically blocked the entrance to the store.

The jury acquitted the co-defendants but returned a guilty verdict as to petitioner. This conviction was affirmed by the Court of Criminal Appeals of Tennessee on August 23, 1974. *Moore v. State*, 519 S.W.2d 604 (Tenn.Cr.App.), and the Supreme Court of Tennessee denied certiorari on February 3, 1975.

Petitioner contends that he is entitled to relief because T.C.A. § 39–4301 is unconstitutionally vague, or, alternatively, unconstitutional as applied to him.

The Supreme Court has on a number of occasions invalidated laws because they did not give fair warning of what they made unlawful. A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application is contrary to basic notions of due process. Thus, where criminal statutes do not give fair warning as to what is prohibited or where explicit standards for those who apply the laws are not provided, such statutes will be struck down as vague. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L.Ed.2d 110 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Gregory v. City of Chicago*, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *United States v. Hariss*, 347 U.S. 612, 74 S. Ct. 808, 98 L.Ed. 989 (1954); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L. Ed. 888 (1939). A statute that might appear to be vague on its face may, however, be saved by a narrowing judicial interpretation. *See Smith v. Goguen*, 415 U.S. 566, 573 n. 10, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

The Tennessee courts have previously interpreted the statute in a case not unlike the petitioner's. In *Swain v. State*, 219 Tenn. 145, 407 S.W.2d 452 (1966), the Court applied the statute to a person who organized a boycott of a beer distributor for the purpose of obtaining personal payments. *Swain* involved a threat to do injury to the business of the beer distributor for the purpose of extorting money. The only differences between the *Swain* case and the one under consideration are that in the former the payments were actually made and were intended for the personal use of the defendant. The statute does not require, however, payment by the victim but only the making of a threat by the defendant, together with an intent to secure a payment. *See Furlotte v. State*, 209 Tenn. 122, 128, 350 S.W.2d 72 (1961). The statute concerns the meth-

od by which a payment is sought and not the use to which the money is ultimately to be applied. The fact that petitioner apparently did not intend to make personal use of the money is of no significance here. *Cf. United States v. Provenzano,* 334 F.2d 678, 685 (3d Cir.) *cert. den.* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). The statute is clear that 'it prohibits malicious threats for unlawful purposes and is not vague.

Petitioner does not contend that the indictment did not give him fair notice of the charge against him. Rather he contends that it charged no illegal act. Petitioner maintains that the purported threat, *i. e.,* "Well, I guess we'll have to close them up," coupled with the activity of picketing are not sufficient to constitute the crime of extortion. The statute, however, proscribes only malicious threats made with the intent to extort or compel the person threatened to act against his will. Questions of malice and intent are matters for the jury which are to be determined by taking into consideration all of the facts and circumstances shown by the evidence. Only where the charge against a defendant is totally lacking in evidentiary support is his conviction unconstitutional under the due process clause of the Fourteenth Amendment, otherwise, it is not reviewable on an application for federal habeas corpus relief. *Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Cunha v. Brewer,* 511 F.2d 894, 898 (8th Cir. 1975).

In this case, the jury obviously found that petitioner had made a malicious threat to injure Red Food's property, *i. e.,* its business, for the purpose of obtaining money. He was the only one of the three co-defendants who made a statement that could be taken as a threat.[2]

Petitioner also suggests that the statute is unconstitutional as applied to him because it infringed upon his constitutional right to picket. While there is a constitutional right to picket, *see e. g. Thornhill v. Alabama,* supra, it is clear that this right is not absolute. For example, picketing is not allowed in connection with a secondary boycott in the context of labor disputes. 29 U.S.C. §§ 158(b)(4), 187. *See Riverside Coal Co. v. United Mine Workers of America,* 410 F.2d 267 (6th Cir.) *cert. den.* 396 U.S. 846, 90 S.Ct. 89, 24 L.Ed.2d 95 (1969). Furthermore, under the Hobbs Act, 18 U.S.C. § 1951, the threat to picket or picketing itself cannot be used by labor officials to extort money in return for "labor peace." *See e. g. United States v. Green,* 350 U.S. 415, 76 S.Ct. 522, 100 L.Ed. 494 (1956); *United States v. Varlack,* 225 F.2d 665 (2d Cir. 1955); *United States v. Compagna,* 146 F.2d 524 (2d Cir.) *cert. den.* 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945). In any event, petitioner was not convicted for his picketing activities but for threatening to picket for the purpose of extorting a payment. This was not constitutionally protected conduct and therefore petitioner was properly convicted under T.C.A. § 39–4301.

For the foregoing reasons, an order will enter dismissing the application for habeas corpus relief.

---

2. Although petitioner infers in his brief that he was convicted because he was a leader in a somewhat unpopular minority movement, *i. e.* the Black Panther Party, the evidence showed that at least one of the other co-defendants was also a member of that movement but was nevertheless acquitted by the jury.