PER CURIAM.
Russell Harris Calamia appeals his jury conviction for extortion. Calamia contends that the court erred in instructing the jury with a definition of legal malice for the term “maliciously” in the extortion statute. § 836.05, Fla. Stat. (2009). Calamia also contends that the court erred in instructing the jury that a communication to a third party is sufficient for a “communication” within the meaning of the statute. We find merit to Calamia’s contentions and reverse and remand for a new trial.
In 1988, Calamia pleaded guilty to second-degree murder and agreed to a twenty-year sentence followed by probation. The victim’s sister, Debbie Pitts, attended every hearing in the case, including the sentencing hearing. She continued to be in constant contact with the prosecutor regarding her family’s interest in the prosecution and the subsequent probation hearings. Calamia violated his probation and was ordered to wear a GPS monitoring device. The GPS monitoring device agitated Calamia because it caused him problems at work and with his social activities. Roughly six months after Calamia’s probation hearing, his attorney received a letter in which Calamia made threats toward Debbie Pitts and her family. The attorney was concerned that he had an ethical obligation to disclose the threat of bodily harm contained in the letter. As a result, the attorney reported the contents of the letter to the assistant state attorney, but the attorney did not provide a copy of the letter. The assistant state attorney revealed the threat to Ms. Pitts and her family. The State, based upon the defense attorney’s representations, brought a violation of probation action against Calamia and, through a court order, was able to compel production of Calamia’s letter. The lower court found Calamia violated his probation. On the basis that the letter was inadmissible, Calamia appealed the violation of probation to this Court, which per curiam affirmed. See Calamia v. State, 998 So.2d 622 (Fla. 5th DCA 2008). The State then charged Calamia with ex *1009 tortion pursuant to section 836.05. The case went to trial, and a jury convicted Calamia of extortion. This appeal follows.
Calamia raises numerous issues on appeal; two merit discussion and require reversal. The first has to do with the jury instruction that defined the term “maliciously” as found in the extortion statute, which provides:
Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s.775.082, s.775.083, or s.775.084.
§ 836.05, Fla. Stat. (2009) (emphasis added). At trial, without objection,[1] the jury was instructed:
To prove the crime of extortion by written or printed threat the State must prove the following three elements beyond a reasonable doubt:
1. Russell Harris Calamia maliciously threatened an injury to the person of another, 'to wit, Debbie Pitts or a member of her family.
2. The threat was made by written or printed communication to another, to wit, James Kontos.
3.The threat was made with intent thereby to compel another, to wit, Assistant State Attorney Robert Wayne Holmes, to do any act or refrain from doing any act against his will, to wit, to accept a defense proposal or refrain from opposing a defense motion requesting the Court either reduce the probationary portion of the Defendant’s sentence of 15 years, or sentence the Defendant to either 18 months or three years in the Department of Corrections after termination of probation, said sentence being served for the offense of second degree murder in Brevard County, case number 86-504-CFA.

The word maliciously means intentionally and without lawful justification.

It is not necessary for the State to prove that the Defendant intended or had the ability to carry out the threat.
(Emphasis added).
The issue is whether this Court adopts the definition for “actual malice” or “legal malice” as it relates to the extortion statute. The instruction for “maliciously” given in this case — “intentionally and without lawful justification” — was the standard for legal malice. See Adams v. State, 799 So.2d 1084, 1089 (Fla. 5th DCA 2001) (citing Young v. State, 753 So.2d 725, 728 (Fla. 1st DCA 2000)). Calamia argues that “maliciously” should have been defined as actual malice. Unlike legal malice, actual malice requires proof of evil intent or motive. Adams, 799 So.2d at 1089 (citing Ramsey v. State, 114 Fla. 766, 154 So. 855, 856 (1934)). There is no standard jury instruction for the crime of extortion, only a proposed instruction that includes the definition of legal malice.
*1010 In Florida, two cases define “maliciously” in the context of extortion; both cases support the State’s position that legal malice is the appropriate standard. Dudley v. State, 634 So.2d 1093, 1094 (Fla. 2d DCA 1994) (citing Alonso v. State, 447 So.2d 1029, 1030 (Fla. 4th DCA 1984), to define “maliciously”). In Alonso, the Fourth District Court of Appeal provided:
[Actual malice] is not contemplated by the crime of extortion. The basic statutory ingredients are a threat made maliciously with the intent to require another to perform an act against his will. The malice requirement is satisfied if the threat is made “willfully and purposely to the prejudice and injury of another,.... ” Black’s Law Dictionary, 4th Ed.
The extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another’s person, reputation, or property. Furthermore, the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will.
Carricarte v. State, 384 So.2d 1261 (Fla.1980). A threat is malicious if it is made intentionally and without any lawful justification. Coupled with the requisite intent it constitutes the crime of extortion.
Alonso, 447 So.2d at 1030.
Calamia argues that the Fourth District’s reliance on Carnearte is misplaced. In Carnearte, the Florida Supreme Court found that the term “maliciously” in the extortion statute did not render the statute unconstitutionally vague. Carricarte, 384 So.2d at 1263. The supreme court supported its decision with other cases, only one of which provided a definition of malice. Id. (citing State v. Gaylord, 356 So.2d 313, 314 (Fla.1978)). In Gaylord, the supreme court said “maliciously” in Florida’s child abuse statute, section 827.03, Florida Statutes (1975), “[provides] a standard of conduct understandable by a person of ordinary intelligence.” Gaylord, 356 So.2d at 314. In the child abuse context, “[m]al-ice means ill will, hatred, spite, an evil intent.” Id. Therefore, Calamia contends that because the court in Carnearte relied on a definition of actual malice to withstand a vagueness challenge to the extortion statute, the Fourth District should not have adopted the legal malice standard in Alonso.
We think that the definition of actual malice, as used in Gaylord, is the instruction that should have been used in this case. We do note that the Legislature amended the child abuse statute, section 827.03, to change the definition of “maliciously” from actual malice to legal malice. Ch. 2003-130, § 1, at 790-91 Laws of Fla. (2003). However, the supreme court has not revisited the definition as set forth in the extortion statute. Although we think that the Fourth District’s analysis in Alon-so is correct and legal malice is the more appropriate definition, we are compelled to follow the supreme court’s directive in Carnearte. Therefore, we hold actual malice is the correct standard for extortion and certify conflict with Alonso and Dudley.
The State correctly contends that there was not a contemporaneous objection to this instruction; however, Cala-mia argues that the error is fundamental because it reduced the State’s burden. To be fundamental, an error in a jury instruction must be pertinent to what the jury must consider to convict. Stewart v. State, 420 So.2d 862, 863 (Fla.1982). To convict a defendant, the State must prove all essential elements of guilt beyond a reasonable doubt. State v. Cohen, 568 So.2d 49, 51 (Fla.1990) (citing In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 *1011 (1970)). It is fundamental error to use the definition of legal malice when that of actual malice is appropriate because it reduces the State’s burden on an essential element of the offense charged. See Reed v. State, 837 So.2d 366, 369 (Fla.2002) (quoting Young, 753 So.2d at 729).
Next, we address the jury instruction as it relates to “communication.” The instruction provided as follows:
The threat was made' by written or printed communication to another to-wit James Kontos.
The State, argues that Calamia is precluded from arguing that the jury instruction was incorrect based upon the doctrine of res judicata. We find the State’s argument is without merit as the prior proceeding was a probation hearing, which has substantially different procedural rules than a criminal trial on a new charge.
The statute does not define to whom the communication must be made. Presently, case law in Floridá does not clarify whether a “communication” must be sent directly, indirectly, or ever reach the victim of extortion.
In Duan v. State, 970 So.2d 903 (Fla. 1st DCA 2007), the First District set forth a jury instruction that required the communication be made to the person being extorted. Id. at 905-06. However, the issue in Duan was whether a threat of mental injuries is prohibited under the statute. Id.
Similarly, in Dudley, the Second District affirmatively resolved the issue of whether convictions on both the extortion statute, section 836.05, and the statute criminalizing a threat of bodily harm, section 836.10, constitute a violation of double jeopardy. Dudley, 634 So.2d at 1094. Section 836.10 provides, as follows:
Any person who writes or composes and also sends or procures the sending of any letter, inscribed communication, or electronic communication, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The court held that in order to find that convictions for both offenses violate double jeopardy, the elements of making a written threat are subsumed within the Offense of the extortion statute. Dudley, 634 So.2d at 1094. In the criminal threat statute, “ ‘the threat is to the recipient of the communication or a member of his family.’ ” Suggs v. State, 72 So.3d 145, 147 (Fla. 4th DCA 2011); (quoting State v. Wise, 664 So.2d 1028, 1030 (Fla. 2d DCA 1995)). Thus, Dudley implies that a threat must be communicated to the person threatened for criminal liability to attach under the criminal threat statute. By analogy, a threat to a person becomes extortion only when the threat is used to coerce the person to whom the threat is communicated.
Although the issue of whether the communication must be made to the coerced party was not directly addressed in Dudley, the Second District Court explained in dicta:
To prove extortion in a case such as this, it is incumbent upon the prosecution to show that there was a malicious threat of injury against a person, which was communicated in writing for the purpose of compelling that person to commit an act or to refrain from acting against his will.
634 So.2d at 1094 (citing § 836.05, Fla. Stat.). The statement implies that the *1012 person being written to is the person being compelled to act against his or her will.
The plain reading of the extortion statute does not define “communication” or to whom it must be made. Calamia argues that he must have intended that the communication somehow, directly or indirectly, reach the party that Calamia is attempting to coerce. The statute requires “intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will....” § 836.05, Fla. Stat. We infer that the communication must be made in verbal or written form with the intent that it reach the person being compelled to act against his or her will. By not indicating that the communication must be direct, the statute does not exclude indirect from its meaning. In this interpretation, the State must show that the communication, if not made by Calamia directly to the person being compelled, be made indirectly (i.e., to a third party) with intent that the communication reach the person being compelled. Otherwise, the State would be required to show that the communication’s end point is an intermediary and never go further, which is what happened in the present case.
We interpret the statute to mean that the intent to compel is coupled with the intent that the communication, either directly or indirectly, reaches the coerced person. Applied here, if Calamia made a communication to his lawyer, Calamia must do so intending that his lawyer send the message to the person Calamia intended to compel, so the coercion can actually occur. The jury instruction did not reflect that. It required the jury to find only that the threat was made by written or printed communication to the lawyer. The instruction on communication was fundamentally erroneous and requires this Court to reverse the judgment and conviction and remand for a new trial.
As previously stated, we hold that Carn-earte requires use of an actual malice standard for the crime of extortion and, as to this issue, certify conflict with the Fourth District Court of Appeal’s holding in Alonso, 447 So.2d at 1030, and the Second District Court of Appeal’s holding in Dudley, 634 So.2d at 1094. We likewise certify as a question of great public importance:
IS THE STATE REQUIRED TO PROVE ACTUAL MALICE TO SUSTAIN A CONVICTION FOR THE CRIME OF EXTORTION UNDER SECTION 836.05, FLORIDA STATUTES?
We find no error on the part of the trial court as to the other issues raised by Calamia.
CONFLICT CERTIFIED; QUESTION CERTIFIED; REVERSED and REMANDED.
LAWSON and BERGER, JJ„ and JACOBUS, Senior Judge, concur.

. Calamia did not object to the definition of “maliciously.” However, he made other objections during the charge conference to the State’s proposed jury instructions, the subject of which concern the second issue in this appeal.